HIRAM HARRINGTON v. HENRY L. HOLCOMB AND TRUMAN W. WHITNEY.

*Contract—Equity—Specific performance—Evidence.*

A party who seeks to enforce the specific performance of a contract is called upon to make out a *plain* case, and establish it by his proofs.[1]

Appeal from Gratiot. (Hart, J.) Argued April 24, 1889. Decided June 28, 1889.

Bill for specific performance of contract. Complainant. appeals from decree dismissing bill. Decree affirmed. The facts are stated in the opinion.

*James K. Wright* (*Isaac Marston* and *C. J. Willett,* of: counsel), for complainant.

*Giddings & Crandall* (*John Moore,* of counsel), for defend-ants.

CHAMPLIN, J. In 1867 defendant Henry L. Holcomb was the owner in fee of a large quantity of land in the county of Gratiot, in this State, and on the twenty-ninth day of June,

---

[1]See *Dunton v. Outhouse,* 64 Mich. 419 (head-note 2).

1867, he conveyed an undivided half thereof, together with a half interest in certain personalty, to Thomas Holcomb for the consideration of $40,000, and took his obligations to pay therefor, said Thomas Holcomb making no payment down.

On the twenty-sixth day of July, 1867, said Henry L. Holcomb conveyed the other undivided half of said real and personal property to John L. Evans for $42,500, $10,000 of which sum was paid down, and a mortgage given back upon the said lands of $32,500, to secure the payment of the balance. This mortgage was duly recorded.

Portions of these lands were timbered with pine of great value, and another portion was lying in and contiguous to the village of St. Louis, in said county.

Thomas Holcomb and Evans formed a copartnership, and engaged in the business of lumbering, and cut off and sold about 13,000,000 feet of pine from said land, worth at least two dollars a thousand stumpage.

The defendant Henry L. Holcomb, then a resident of the state of Connecticut, advanced to the firm of Holcomb & Evans considerable sums of money, and indorsed their notes, whereby they became largely indebted to defendant Henry L. Holcomb.

The firm continued business until December, 1873, but had not paid anything upon the indebtedness due the defendant Henry L. Holcomb, and being in embarrassed circumstances, they reconveyed to him a large portion of the land purchased for $46,000, which was applied equally upon the indebtedness due him from the individual members of said firm. After applying said proceeds there was still left due from John L. Evans, of the original purchase price, something over $27,000.

In the month of October, 1873, Henry L. Holcomb visited St. Louis to examine into the financial condition of the firm, and at that time found Mr. Evans in charge of the business. He also saw the complainant, who represented that the firm

owed him $2,400 or over, and he told defendant Holcomb that he could not get his pay, and spoke about throwing them into bankruptcy. Defendant Holcomb then said to him that he and Thomas Holcomb would be out there within a month or so, and he expected to take the property back, and the debts would all be paid, and he replied with that view he would wait.

On the twentieth day of November, 1873, a contract in writing was entered into, which was signed in the firm name of Holcomb & Evans, but made, and the signature of the firm affixed, by Evans, for the sale to complainant of a parcel of land in the township of Pine River, Gratiot county, Michigan, consisting of five acres lying in or adjacent to the village of St. Louis. This land was a portion of the tract sold by defendant Henry L. Holcomb to Thomas Holcomb and to John L. Evans, and upon which the mortgage was executed by Evans to defendant Holcomb. The contract expressed the consideration to be $500, and Harrington agreed to pay this sum within thirty days from the above date. The contract was signed by the vendee. It also contains the following indorsement:

"November 20, 1873, received on the within contract $500 (five hundred dollars) in full.    HOLCOMB & EVANS."

This receipt was signed by Mr. Evans.

The complainant did not pay cash for the land, but the firm of Holcomb & Evans were indebted to him, and the purchase price was applied upon such indebtedness.

In February or March, 1874, defendant Henry L. Holcomb paid to complainant, Harrington, the amount of indebtedness claimed by him to be due from Holcomb & Evans, amounting to about $2,400.

The land described in the contract was in a cleared field, containing considerably more than the five acres agreed to be conveyed, and, previous to the contract being signed, Harrington had caused the same to be surveyed and staked

out.   The following plat will show the shape of the parcel of
land, the distances being in chains and links:

The north and west sides are bounded by highways.
Thomas Holcomb was not in the State when the survey was
made, and he testifies that the contract was not made with
his knowledge or consent.   Harrington assisted in making
the survey, and it was made under his instructions.   Evans
was not present.

Harrington testifies that he entered into possession, but
the only act of possession he testifies to was an offer to
trade off a lot for a house, which trade was not consum-
mated.

Henry L. Holcomb, after his re-purchase, entered into
actual possession, and caused the whole field to be plowed and
cultivated as farming land.   The complainant claims that
before he made the purchase he knew that defendant Hol-
comb's mortgage from Evans covered the premises in ques-
tion, and that he had an interview with defendant Holcomb,
and told him he was negotiating for the purchase of the five
acres, and desired to know from him if he should buy if he
would release the same from his mortgage, and that defend-
ant Holcomb assured him that he would, and upon the
strength of this assurance he made the purchase, and paid
the purchase money in the manner stated.   This statement is

positively denied by defendant Holcomb, who says that he did not know of the contract of purchase until after he paid complainant the $2,400 indebtedness above stated, and a short time after he had done so complainant claimed he had purchased five acres, and asked him to give to him (Harrington) a quitclaim deed of it, and he refused to do so.

Afterwards, in May, 1875, complainant employed the law firm of Wright & Whitney to file a bill in the circuit court of Gratiot county to compel Thomas Holcomb and John L. Evans to specifically perform the contract. Henry L. Holcomb was not made a party to the bill. A notice of *lis pendens* was, however, filed in the proper office. The conveyance from Thomas Holcomb to Henry L. Holcomb, made in December, 1874, of his undivided half of the lands, was not recorded until the twenty-seventh day of April, 1878, and complainant claims that he did not know of such conveyance until after it was recorded.

The suit for specific performance was not prosecuted, and Henry L. Holcomb filed his bill to foreclose the Evans mortgage, a decree was obtained, and the premises were sold thereunder in March, 1880, to defendant Henry L. Holcomb.

In February, 1882, defendant Holcomb sold and conveyed a portion of the premises in question to Truman W. Whitney, who gave back a mortgage to secure payment of a portion of the purchase money. Two other portions were also sold and conveyed, viz, about one-eighth of an acre to the St. Louis Driving Park, and about three-fourths of an acre to a railroad company for a right of way. Mr. Whitney was one of the members of the firm of Wright & Whitney, who filed the bill for specific performance in 1875. He can claim no greater rights than his grantor had at the time of the conveyance to him.

On the eleventh of February, 1884, the complainant filed this bill praying for a specific performance of said contract. The only parties made defendants are Henry L. Holcomb and

Truman W. Whitney. He prays that defendant Whitney may be decreed to hold the legal title to the premises in trust for complainant, and that he be r·quired to convey the same to him, and that defendant Holcomb be required to discharge from the operation of the mortgage thereon the said premises.

The testimony is very conflicting upon the merits of the controversy. A party who seeks to enforce the specific performance of a contract is called upon to make out a plain case, and establish it by proofs. It is not satisfactorily shown that the land in question was partnership property, and the authority of Evans to enter into a contract to convey it as such is not established. The contract might carry his undivided half interest in the land, but that has been cut off by the foreclosure sale. The agreement to release the mortgaged premises is not established satisfactorily. It requires an agreement in writing to convey, or to agree to convey or relinquish, an interest in lands. There was no agreement in writing in this case to release, and no consideration is shown for the alleged promise to release.

With reference to the alleged agreement to release this land from the operation of the Evans mortgage, the only evidence to sustain the allegation is the testimony of compla.nant, and his testimony is denied by the defendant Holcomb. The circumstances do not convince us that the complainant's testimony should be given the greater weight. At the time he claims the promise was made, Holcomb & Evans were in embarrassed circumstances. They had paid nothing of the large indebtedness due to defendant Holcomb. They had cut off over $26,000 worth of pine from the land covered by the mortgage, and the security had become greatly diminished. He was then contemplating the necessity of taking back the property sold in order to save their indebtedness to him. They were threatened with bankruptcy proceedings, and in order to repossess the property Holcomb would have

to become responsible for their debts as against creditors in bankruptcy. In view of all this, it is quite unlikely that he would promise to release his security on the land in question without consideration, for that security was valid, as against creditors, whether the firm were thrown into bankruptcy or not.

The testimony of Evans upon the subject of releasing in general is contradicted by both Thomas Holcomb and the defendant Holcomb, and with reference to releasing this particular piece of land, in view of his cross-examination, his testimony is not reliable.

We are of opinion that the circuit judge arrived at a correct result, and the decree entered below is affirmed, with costs.

MORSE, CAMPBELL, and LONG, JJ., concurred. SHERWOOD, C. J., did not sit.